Buddy Gordon **MIKEL**, Appellant,

v.

**STATE of Missouri, Respondent.**

No. KCD 28669.

Missouri Court of Appeals,
Kansas City District.

April 4, 1977.

Motion for Rehearing and/or Transfer
Denied May 2, 1977.

Application to Transfer Denied
June 14, 1977.

Clyde E. Rogers, Public Defender, Moberly, for appellant.

John C. Danforth, Atty. Gen., W. Mitchell Elliott, Asst. Atty. Gen., Jefferson City, for respondent.

Before WASSERSTROM, P. J., and SOMERVILLE and TURNAGE, JJ.

WASSERSTROM, Presiding Judge.

Appellant pleaded guilty in 1970 to forcible rape and was sentenced to 10 years in prison. In 1974 he filed a motion to set aside the conviction under Rule 27.26, and the trial court sustained the motion. The State appealed, and this court reversed and remanded because of insufficient findings of fact. *Mikel v. State*, 528 S.W.2d 796 (Mo.App.1975). On February 3, 1976, the trial court entered new detailed findings of fact and conclusions of law, but this time denied appellant's motion. Appellant now appeals that ruling.

A threshold question of mootness calls for first attention. The State represents in its brief that the sentence under review was commuted on May 11, 1976, and contends that this proceeding is moot because appellant is not in custody under the sentence sought to be vacated. Appellant in his reply brief does not deny the facts of commutation of sentence but nevertheless urges that this proceeding should not be dismissed as moot but rather that this proceeding should be considered as an application for a writ of error coram nobis. Appellant's request is well taken, and this appeal will be determined on that basis. *State v. Stodulski*, 298 S.W.2d 420 (Mo.1957); *Halley v. State*, 485 S.W.2d 5 (Mo.1972); *Stoner v. State*, 507 S.W.2d 80 (Mo.App.1974).

The grounds, in condensed form, upon which appellant seeks to set aside this sentence are that the trial court was clearly erroneous in each of the following findings: 1) that sufficient inquiry was made at the hearing on the plea of guilty to determine whether appellant understood the nature of the accusation; 2) that appellant had received effective assistance of counsel; and 3) that the psychiatric report from the Fulton State Hospital was sufficient under § 552.202–3 RSMo 1969. None of those grounds is meritorious.

The skeletal procedural facts necessary for an understanding of the points on appeal are these. On January 8, 1970, Mr. W. F. Daniels was appointed attorney for appellant, promptly after filing of the complaint against him and his arrest. On February 16, 1970, Mr. Daniels filed a motion for psychiatric examination which was granted the same day, and defendant was sent to the State Hospital at Fulton for examination, observation and report. At the completion of the examination appellant was returned from Fulton on about April 9, 1970, and a psychiatric report of the examination was filed with the trial court on April 14, 1970.

On the latter date, appellant was brought to the courthouse where he and Mr. Daniels conferred. At that time Mr. Daniels conducted negotiations with the prosecuting attorney, as a result of which a plea bargaining understanding was reached. Then on that same day, appellant was arraigned before the court, entered the plea of guilty, and the court entered sentence of 10 years imprisonment.

Immediately before accepting the plea of guilty, the trial court held a hearing which was attended by appellant, his counsel and the prosecuting attorney. The court asked the prosecutor to outline the facts of the offense. In response the prosecuting attorney stated that appellant, together with another young man, had accosted the victim while she was walking along the street, that the victim was forced at gun point into the car in which the two young men were riding; that appellant had the gun which he kept pointed at the victim; that the two

men drove into the neighboring county where the two men each committed rape. The prosecutor's statement ended with the following colloquy:

"MR. JAYNES: . . . At the scene of the alleged rape this defendant was the first person to try to have intercourse.

THE COURT: What do you mean try, did he or did he not, according to your evidence?

MR. JAYNES: From our evidence it would be legally sufficient that he had penetration, yes.

THE COURT: And was it against her will?

MR. JAYNES: Our evidence is that she submitted against her will at the coercion of the defendant."

Immediately following, the court questioned appellant, commencing as follows:

"THE COURT: Very well. You have heard the Prosecuting Attorney state the charge against you, you understand you are charged with raping this girl, [stating her name], and that you actually penetrated her private parts with your private parts and such action was against her will, do you understand what you are charged with?

DEFENDANT MIKEL: Yes.

THE COURT: Do you admit that you intentionally committed this act?

DEFENDANT MIKEL: What do you mean, Your Honor?

THE COURT: That you did it knowing what you did, you intended to do it?

DEFENDANT MIKEL: Yes."

The court went on to inquire of appellant whether he had discussed the guilty plea with his attorney; whether he understood he was entitled to a jury trial; whether he understood he was waiving right to a jury trial and the right to confront witnesses, whether he understood the guilty plea was a confession of guilt and waived constitutional privilege against self-incrimination; whether he had been threatened or coerced or received any promises to cause the guilty plea; whether he understood that any promises or deals were not binding upon the court; whether he understood the court would fix the punishment within a range of from 2 years to death; and whether with all that knowledge, appellant still wished to plead guilty, freely and voluntarily. Only after receiving satisfactory answers from appellant, did the court accept the plea.

### I.

█ As the predicate for his first point, appellant relies on that portion of the court's interrogation of the appellant quoted above. He argues that appellant's initial response, "What do you mean, Your Honor?" shows that he did not understand the interrogation and serves to make the plea equivocal.

He bolsters that argument by referring to a statement in the report of psychiatric examination which undertakes to recite the facts of the offense and in that connection says that appellant forced the victim down "and unsuccessfully attempted to penetrate her." Appellant attributes high importance to this matter of penetration on the theory that if he failed in that attempt, then he could be guilty only as an accessory. He phrases his argument in his brief as follows: "* * * the factual information in the record in this case indicates that Movant's guilt of the crime of rape would be as an accessory rather than a principal. * * * If Movant was charged in fact as an accessory then this should have been developed in the examination at the time the plea was entered in order to ascertain Movant's understanding of the nature of the charge against him."

This argument contains two basic fallacies. In the first place, the record as a whole shows that the matter of penetration had been brought into sharp focus by the court's questioning of the prosecuting attorney. Appellant was present at that time and had to be aware of the court's concern with the question and with the assurance by the prosecutor that "From our evidence it would be legally sufficient that he had

penetration, yes." Taken in this context, it cannot reasonably be said that appellant was unaware of the elements of the crime. *Robinson v. State*, 482 S.W.2d 492 (Mo. 1972); *White v. State*, 530 S.W.2d 444 (Mo. App.1975); *Williams v. State*, 508 S.W.2d 211 (Mo.App.1974).

Moreover, the importance which appellant seeks to attribute to the question of whether he achieved penetration is grossly exaggerated. Whatever the fact may have been with respect to penetration by appellant himself, the record indicates no question whatsoever about the fact that his companion did achieve full penetration in his act of rape. The two young men had acted together throughout this whole episode, and appellant plainly was guilty of aiding and assisting his companion's act of rape. The distinction which appellant's present counsel (who was not his counsel at the trial stage) insists on trying to draw between accessory and principal has been abrogated in Missouri by § 556.170 RSMo 1969. Appellant's aid and assistance to his companion, which would have made appellant liable as an accessory at common law, now renders him liable as a principal. *State v. Drope*, 462 S.W.2d 677 (Mo.1971); *State v. Sheard*, 276 S.W.2d 191 (Mo.1955); *State v. Sheard*, 276 S.W.2d 196 (Mo.1955). Whether or not appellant himself committed an act of penetration therefore is essentially immaterial to his guilt of rape as charged.

## II.

With respect to appellant's second assignment of error, namely the alleged ineffective assistance of counsel, the starting point for discussion must be that any such ineffectiveness is immaterial except as it may bear on the voluntariness and understanding nature of the plea of guilty. *White v. State, supra; Williams v. State, supra· Miller v. State*, 498 S.W.2d 79 (Mo. App.1973); *Hall v. State*, 496 S.W.2d 300 (Mo.App.1973). None of the complaints now made of the representation afforded

appellant by his initial counsel Mr. Daniels can be said to deprive appellant's plea of a voluntary and understanding quality.

Considerable complaint is now made as to the adequacy of the time which Mr. Daniels spent with appellant prior to the plea and the fact that Mr. Daniels' investigation consisted almost entirely of listening to appellant's statement of the facts and reading the contents of the prosecuting attorney's file. However, appellant has wholly failed to prove that any additional investigation would have turned up anything helpful to his cause and he therefore has not made the necessary showing of prejudice from the lack of some further investigation. *Curry v. State*, 504 S.W.2d 97 (Mo. 1974); *McKnight v. State*, 497 S.W.2d 201 (Mo.App.1973). Appellant now lays much stress on the fact that Mr. Daniels did not investigate and explore the statement in the psychiatric report which indicated that appellant's attempt to rape the victim did not result in a successful penetration. It is unnecessary to dwell on this matter any further than to repeat what has already been said under Point I of this opinion, that penetration by appellant's own act was unnecessary as an element to his guilt; he was in any event guilty as a principal based on the rape committed by his companion.

The fact is of no consequence that Mr. Daniels did not press for a hearing before the court respecting the conclusions reached by the psychiatric examiner. The mere fact that the trial court had ordered a psychiatric examination did not establish a bona fide doubt as to appellant's mental competence. *Boyer v. State*, 527 S.W.2d 432 (Mo.App.1975); *Jones v. State*, 505 S.W.2d 96 (Mo.App.1974). The negative finding contained in the psychiatric report vitiated any previous doubt which may have existed in that regard. *Anderson v. State*, 493 S.W.2d 681 (Mo.App.1973). Mr. Daniels had never even at the beginning had any substantial reason to doubt appellant's ability to understand and to communicate with him; Daniels testified that his reason for

requesting the mental examination was simply "out of an over abundance of caution" to avoid future criticism. Absent any grounds for entertaining a substantial doubt concerning the accuracy of the psychiatric report or making its conclusion suspect, Mr. Daniels was under no obligation to seek further psychiatric examination or to request a court hearing to test the report given by the Fulton State Hospital. *Davis v. State*, 517 S.W.2d 97 (Mo.1974); *Collins v. State*, 479 S.W.2d 470 (Mo.1972); *Ervin v. State*, 525 S.W.2d 381 (Mo.App.1975).

Appellant now sharply challenges the sufficiency of Mr. Daniels' representation on the ground that Mr. Daniels did not tell him of his right to seek a second psychiatric examination at his own expense or to challenge the report submitted by the Fulton State Hospital. However, in this case there was no apparent reason to challenge the report. The facts of this case are therefore akin to those in *Jones v. State, supra,* where the attorney was held not at fault for ineffective assistance even though he did not advise the defendant of the statutory right to challenge the report of the first and only psychiatric examination.

Appellant relies heavily on the decision in *Hall v. State, supra,* to establish the ineffectiveness of representation by Mr. Daniels. The facts of the *Hall* case were far different from those in the case at bar, and that decision affords no support to appellant here.

### III.

■ For his final point, appellant contends that the trial court failed to follow the procedural requirements of § 552.020–3. His first argument in this regard is that the statute requires that the report include an opinion as to whether the examinee "as a result of mental disease or defect was incapable of conforming his conduct to requirements of law." Although the report from the Fulton State Hospital did not specifically direct itself to that particular, the report did find that "the accused has no mental disease or defect within the mean-

ing of Section 552.010" and that finding can be understood as including a determination that appellant did not suffer from any uncontrollable impulse making him incapable of conforming his conduct to law. Even if the report were to be held insufficient in this regard, that would avail appellant nothing at this stage because the deficiency would amount to no more than mere trial error which cannot be reviewed either under Rule 27.26 or in an application for a writ of error coram nobis. *Bledsoe v. State*, 456 S.W.2d 4 (Mo.1970)· *Campbell v. State*, 515 S.W.2d 453, 455 (Mo.1974). Furthermore, the plea of guilt waived any and all alleged procedural infirmities antedating the plea. *Williams v. State, supra.*

■ Appellant also argues strongly that the trial court was under a duty "to do one of two things: make a determination and finding of record on the basis of the report filed; or, hold a hearing on its own motion." No such duty existed. There being no basis for a bona fide doubt as to the correctness of the psychiatric report, the court was not obligated to hold a hearing. *Davis v. State, supra* ; *Collins v. State, supra* ; *Newman v. State*, 481 S.W.2d 3 (Mo.1972); *Anderson v. State, supra; Miller v. State, supra; Boyer v. State, supra.*

■ Nor was the failure to make a determination and finding of record on the basis of the report a fatal procedural error. The acceptance and approval of the report by the court was necessarily implied from its acceptance of the appellant's guilty plea. As stated under like circumstances in *Maggard v. State*, 471 S.W.2d 161, 164 (Mo. 1971):

"On the record of this case, it is clearly inherent in the determination by the trial court to permit appellant to waive jury trial and, on a subsequent date, to enter a plea of guilty that the trial court found appellant to be competent to assist in his own defense as well as competent to intelligently, knowingly, and voluntarily waive jury trial and enter a guilty plea."

Stated slightly differently, the acceptance of the plea is equivalent to a determination

of the defendant's mental competence. *Miller v. State, supra; Jones v. State, supra.*

Appellant argues that the trial court could not have impliedly approved the report because there is no showing of record that the trial judge had ever seen the report or had its contents called to his attention prior to appellant's plea of guilty. The conclusion sought to be drawn by appellant does not follow. *Davis v. State, supra,* holds contrary to appellant's contention. In *Davis,* Judge Blair ordered a psychiatric examination but before a report could be received the case was transferred on change of venue to Judge Hoffman. Judge Hoffman accepted a plea of guilty but the record was devoid of any evidence that Judge Hoffman had ever seen or considered the report. The Supreme Court held that Judge Hoffman's failure to make a finding or hold a hearing did not deny due process to the defendant. So also in *Anderson v. State, supra,* the defendant was sent for psychiatric examination. After he returned but before the psychiatric report was actually received and filed, defendant pleaded guilty and the plea was accepted by the court. The evidence showed that the defendant knew what the conclusion of the report would be even though it was not yet actually filed at the time of the plea proceeding. The acceptance of the plea was upheld, the appellate court holding, "the guilty plea being entered under these circumstances attests that movant had effectively waived his right to contest the examining psychiatrist's finding of competency and his right to a further examination or hearing by the court."

Appellant takes the rather strange position that there could be an implied waiver of his right to challenge the psychiatric report if the statutory 5 days had expired after the filing of the report and before the plea of guilty; but he insists that there can be no such implication and that any waiver must be express if it is to be effective within the 5 day period for making challenge. The attempted distinction between express and implied waiver is mistaken. Appellant cites no authority for his contention, and it cannot be supported on principle. The *Anderson* opinion just quoted is to the contrary. The only question is whether he was competent to make a waiver of the 5 day provision. If he was competent, he could waive at any time; if he was not competent, the passage of 5 days time could not make him so.

Appellant cites and relies heavily on *Miller v. State, supra,* in which this court reversed a conviction on a plea of guilty and remanded for the purpose of further inquiry into the competency of the defendant. The facts of that case were, however, completely unlike those presented here. In *Miller,* the attorney who represented the defendant at the time of the guilty plea testified at the 27.26 hearing that he believed and had always believed that the defendant was actually "crazy" but he did nothing to bring his belief to the attention of the psychiatric examiner whom he knew personally, nor did he bring to the attention of the trial court his serious doubts about his client's competency to proceed. Moreover, in *Miller* there was a showing that the defendant had had a long history of mental illness with prior mental hospitalization and the trial judge himself remarked at the time of sentencing, "I know this young man needs professional psychiatric help and I hope he can get it before it is too late." Thus in *Miller,* there was a very ample basis upon which to have a bona fide doubt as to the soundness of the psychiatric report. No similar showing has been made in the present case.

The findings of the trial court were not clearly erroneous. Appellant has therefore not shown himself entitled to any relief. *State v. Stodulski, supra; Stoner v. State, supra.*

Affirmed.

All concur.