**Kendall ROBINSON, Appellant,**

**v.**

**Walter LEAPLEY, Warden of the South Dakota State Penitentiary, Appellee.**

No. 93–2448.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 18, 1994.

Decided June 9, 1994.

Robert C. Riter, Pierre, SD, for appellant.

Gary R. Campbell, Pierre, SD, for appellee.

Before McMILLIAN, WOLLMAN, and MAGILL, Circuit Judges.

WOLLMAN, Circuit Judge.

Kendall Robinson appeals from the district court's [1] order denying his petition for a writ of habeas corpus under 28 U.S.C. § 2254. We affirm.

## I.

On May 8, 1985, Robinson was being held in the Hughes County Jail in Pierre, South Dakota. Robinson and Jeff Graycek asked Deputy Sheriff Ronald Wilson for a mop and bucket because the shower in their cell had overflowed. Wilson brought the requested items to the inmates. He returned later and unlocked the cell door to retrieve the mop and bucket. As he reached into the cell, Robinson jumped from a table in the cell, grabbed the bars above the cell door, swung his body, and kicked Wilson in the face, injuring Wilson's eye and breaking his nose. Robinson and Graycek exited the cell and locked Wilson in it. As Robinson and Graycek were leaving the jail, they grabbed Matron Anita Cass and locked her in a visitation booth.

Approximately a week later, Officer Bill Olson apprehended Robinson and his girlfriend, Paula Bartels, in Rapid City, South Dakota. Olson placed Robinson and Bartels in the Pennington County Jail. Robinson told Olson that he would make a statement if

---

1. The Honorable Donald J. Porter, Senior United States District Judge for the District of South Dakota.

no charges would be filed against Bartels. Olson accepted Robinson's offer, and Robinson confessed that he and Graycek had lured Wilson into the cell and that he had kicked Wilson in the face and locked him in the cell.

The State of South Dakota (the "state") filed a Part I information charging Robinson with escape and aggravated assault. Additionally, the state filed a Part II information charging Robinson with being a habitual offender, having been convicted of third-degree burglary on August 28, 1979, of escape on March 31, 1981, and of third-degree burglary on March 31, 1981.

Robinson was arraigned on the Part I information; he pled not guilty and not guilty by reason of insanity. A jury found Robinson guilty but mentally ill on both counts. After receiving the jury's verdict, the trial court arraigned Robinson on the Part II information. Robinson admitted that he had been convicted of the three charged prior felonies, and the court therefore found him guilty of being a habitual offender. As a result, the maximum sentence for his escape and aggravated assault convictions increased from ten years' imprisonment for each offense to life imprisonment for each. The court sentenced Robinson to concurrent prison terms of twenty-two years on the aggravated assault conviction and five years on the escape conviction.

The South Dakota Supreme Court affirmed the escape and aggravated assault convictions, *State v. Robinson,* 399 N.W.2d 324 (S.D.1987), and the denial of his first state petition for a writ of habeas corpus, *Robinson v. Solem,* 432 N.W.2d 246 (S.D. 1988). In 1989, Robinson filed a second state habeas petition. He alleged, among other things, that his convictions for aggravated assault and escape had been obtained in violation of the Ex Post Facto Clause of the United States Constitution and the South Dakota Constitution. South Dakota Circuit Court Judge Donald Heck agreed.[2] Accordingly, on September 9, 1989, Judge Heck

issued an order stating that "the judgment of conviction for escape and aggravated assault ... is hereby vacated and [Robinson] is to be ... given a new trial on said charges."

On January 15, 1990, the state again filed a Part I information charging Robinson with escape and aggravated assault and a Part II information charging him with being an habitual offender. On April 4 and 5, Robinson was retried on the Part I information before the same trial court that had presided at his initial trial. A jury found him guilty of both counts, this time without qualification.

Upon excusing the jury, the trial court stated that had the trial been Robinson's first on the present charges, the court would have arraigned Robinson on the Part II information, secured his plea to the allegations, and set a trial date if he denied them. The court noted, however, that Robinson had already been arraigned on the Part II information, had admitted all three prior felony convictions, and had been sentenced accordingly. Robinson's counsel argued that by setting aside the underlying convictions Judge Heck had also vacated the habitual offender enhancement and that therefore the state needed to prosecute the habitual offender charge. The trial court responded that:

> Well, I'm going to cut through all the red tape and rule that the defendant is not entitled to be retried on the Part Two Information; that he has previously admitted the three prior felony convictions after he was convicted of the underlying felony; and that this Court, after appropriate inquiry, found that the admission was voluntary, that there was a factual basis for it, accepted that admission and found the defendant guilty as an habitual criminal.

Robinson's counsel noted that he had previously made a motion to strike Robinson's 1981 convictions from the Part II information on the ground that they were constitutionally invalid. Counsel asked the court if it was

**2.** Pursuant to section 22–5–10 of the South Dakota Codified Laws, which became effective on July 1, 1985, the trial court had instructed the jury that insanity was an affirmative defense that the defendant had to prove by clear and convincing evidence. Judge Heck found, however, that under the law in effect on the day Robinson escaped from jail, a defendant who pled not guilty by reason of insanity needed to produce only evidence sufficient to raise the question of insanity, with the burden then shifting to the state to prove sanity beyond a reasonable doubt.

going to rule on this motion. The court responded:

> I'm not going to go back and try something again that the defendant has already admitted to and this Court has already found his admission to be voluntary, and so I'm going to treat that conviction as an habitual criminal as not having been affected by Judge Heck's previous ruling.

The state then asked whether the court was taking judicial notice of the court files for the three prior felonies and the file in the present case. The court indicated that it had examined the files and had taken notice of them. The court sentenced Robinson to the same prison terms that it had imposed in 1985, with credit for time served. The South Dakota Supreme Court affirmed the convictions. *State v. Robinson,* 469 N.W.2d 376 (S.D.1991).

Robinson then filed this federal habeas action. A magistrate judge[3] held an evidentiary hearing and recommended that Robinson's petition be denied. The district court adopted the recommendation.

## II.

### A. Habitual Offender Enhancement

Robinson argues that Judge Heck's order reversing his escape and aggravated assault convictions also reversed his habitual offender enhancement.

In Robinson's 1991 appeal, the South Dakota Supreme Court rejected this argument, holding "that it was not error to leave [Robinson's] Part II information undisturbed." *Robinson,* 469 N.W.2d at 379. In reaching its decision, the court expressly adopted the rationale of *People v. Wilkins,* 115 Mich.App. 153, 320 N.W.2d 326 (1982). Wilkins was convicted of carrying a concealed weapon and of being a habitual offender, having been convicted of three prior felonies. The Michigan Supreme Court reversed his conviction for carrying a concealed weapon and remanded the case for a new trial. Wilkins was again convicted of carrying a concealed weapon and was sentenced as a fourth felony

offender. He argued that his habitual offender conviction had been automatically reversed when the conviction for carrying a concealed weapon had been reversed. The court disagreed:

> At the trial on the habitual offender information the people must prove the three prior convictions and the identity of the defendant as the person who committed those offenses. The people sustained this burden of proof in the habitual offender proceeding following the original conviction of carrying a concealed weapon and defendant was properly convicted as an habitual offender, having committed three prior felonies. That conviction was never reversed. The factual determinations essential to support that conviction have never been set aside.
>
> [T]herefore, all that is necessary to empower the court to sentence the defendant as a fourth felony offender after the reversal of the fourth felony conviction is that the defendant be convicted again of the fourth felony offense upon retrial.

*Id.,* 320 N.W.2d at 327; *see also People v. Hatfield,* 182 Mich.App. 384, 451 N.W.2d 634, 635 (1990) (following *Wilkins* ); *State v. Baril,* 155 Vt. 344, 583 A.2d 621, 623 (1990) (applying *Wilkins*'s rationale).

■ As the United States Supreme Court has repeatedly emphasized, " 'federal habeas corpus relief does not lie for errors of state law.' " *Estelle v. McGuire,* —— U.S. ——, ——, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991) (quoting *Lewis v. Jeffers,* 497 U.S. 764, 780, 110 S.Ct. 3092, 3102, 111 L.Ed.2d 606 (1990)). "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.*

■ We do not believe that the South Dakota Supreme Court's holding violates the Constitution. As Robinson points out, under the clean slate doctrine, when a defendant's

---

**3.** The Honorable Carlyle E. Richards, United States Magistrate Judge for the District of South Dakota.

conviction is reversed for trial error, the conviction and sentence imposed pursuant to the conviction are nullified. *See, e.g., Bullington v. Missouri,* 451 U.S. 430, 442–43, 101 S.Ct. 1852, 1860, 68 L.Ed.2d 270 (1981). The reversal of a conviction, however, does not nullify an independent conviction. Although "an habitual criminal charge does not state a separate offense, the determination of whether one is an habitual criminal is" "a distinct issue" and "'essentially independent' of the determination of guilt of the underlying substantive offense." *Oyler v. Boles,* 368 U.S. 448, 452, 82 S.Ct. 501, 503, 7 L.Ed.2d 446 (1962). Accordingly, the reversal of Robinson's underlying convictions did not nullify the separate and independent determination that he was a habitual offender, even though his habitual offender status was used to enhance the sentences for the underlying crimes.

■ Robinson further argues that the trial court's refusal at the 1990 proceedings to allow him to challenge the constitutional validity of his prior felony convictions violated his right to due process. Because Judge Heck's order did not disturb the determination that Robinson was a habitual offender, the trial court had no obligation to permit Robinson to attack the validity of his earlier convictions.[4] Robinson should not now complain about the trial court's decision, for he has had numerous opportunities to challenge the validity of his convictions. Robinson could have attacked his prior convictions in 1985; instead, he admitted the convictions. He could have challenged them in his initial direct appeal or in his initial state habeas petition, but did not do so. He did finally challenge his habitual offender enhancement in his second state habeas petition, but Judge Heck did not reach the issue. He attacked his habitual offender status in his 1991 direct appeal, but the South Dakota Supreme Court rejected his arguments. *Robinson,* 469 N.W.2d at 378–79. He challenges his habitual offender enhancement in this federal habe-

as petition, but as discussed next, we find his challenge is without merit.

■ Robinson argues that his habitual offender determination should be reversed because the state presented insufficient evidence to prove the validity of his prior convictions or, more precisely, the validity of his guilty pleas. In particular, Robinson contends that the state had to prove that he voluntarily and intelligently waived his *Boykin* rights at his guilty pleas, *Boykin v. Alabama,* 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969). This argument is without merit. At the 1985 proceedings, Robinson admitted his prior convictions. Robinson's admission is the "functional equivalent" of a guilty plea and therefore relieved the state of any burden of proof it may have had concerning the constitutional validity of the prior convictions. *Cox v. Hutto,* 589 F.2d 394, 395–96 (8th Cir.1979); *see also Phyle v. Leapley,* 491 N.W.2d 429, 436 (S.D.1992); *Stuck v. Leapley,* 473 N.W.2d 476, 478 (S.D.1991); *State ex rel. Smith v. Jameson,* 80 S.D. 333, 123 N.W.2d 300, 304 (1963). If a defendant does not place the validity of his convictions at issue in his enhancement proceeding, the state may constitutionally presume that the defendant's guilty pleas were taken in accordance with *Boykin. Parke v. Raley,* —— U.S. ——, ——, 113 S.Ct. 517, 523, 121 L.Ed.2d 391 (1992).

■ Treating a defendant's admission of his prior offenses as a guilty plea is constitutional so long as the admission was knowing and voluntary. *Cox,* 589 F.2d at 396 (citing *Boykin,* 395 U.S. at 244, 89 S.Ct. at 1713). Our review of the record satisfies us that Robinson's plea to the Part II information was voluntarily and intelligently entered. Without recounting the procedure in any detail, we note that the state trial court painstakingly informed Robinson of his rights and of the consequences of admitting the prior offenses and that Robinson acknowledged

---

**4.** Robinson argues that the trial court acted improperly by allowing the state to supplement the record when the court would not allow him to challenge the validity of his prior convictions. The state did not supplement the record, however. The state merely asked the court if it was taking judicial notice of the court files for Robinson's prior convictions and for this case. The court responded that it had taken judicial notice of those files. We find the trial court's action neither improper nor unfairly prejudicial.

that he understood those consequences and his rights.

## B. Ineffective Assistance of Counsel Claim

Robinson argues that his 1990 trial counsel was ineffective for the following reasons: he failed to prepare adequately for trial; he failed to suppress Robinson's confession; he failed to exclude evidence of other crimes and bad acts; and he failed to object during the prosecutor's closing argument.

To establish an ineffective assistance claim, Robinson must show that his counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Counsel's performance was deficient if his representation fell below an objective standard of reasonableness. *Id.* at 688, 104 S.Ct. at 2065. Counsel's performance prejudiced Robinson's defense if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068.

Even if we assume that defense counsel's alleged failures constituted deficient performance, Robinson has not demonstrated that, but for his counsel's alleged errors, there is a reasonable probability that the outcome of his trial would have been different. As the magistrate judge found, in light of the overwhelming evidence against Robinson, "it strains [one's] credulity to conclude that the ... jury would have decided this case any differently" if Robinson's counsel had done everything that Robinson now suggests.

## C. Suppression Claim

Robinson next argues that his confession to Officer Olson should have been suppressed because it was involuntary, having been made, Robinson contends, to ensure that Robinson's girlfriend, Paula Bartels, would not be charged with a crime. Coercive police activity is a necessary predicate to finding that a confession is not voluntary in the constitutional sense. *Colorado v. Con-*nelly, 479 U.S. 157, 167, 107 S.Ct. 515, 521, 93 L.Ed.2d 473 (1986); *United States v. Robinson,* 20 F.3d 320, 322 (8th Cir.1994). Accordingly, Robinson's claim is without merit, for the police did not employ any coercive tactics to obtain his statement.

## D. Speedy Trial Claim

Robinson argues that he was denied a speedy trial. On September 9, 1989, Judge Heck entered his order vacating Robinson's convictions for escape and aggravated assault. On September 19, the state filed a motion for a certificate of probable cause. On November 13, Judge Heck issued the certificate. The next day, Robinson appeared before the trial court for a bail hearing. On December 19, the state informed Judge Heck that it had decided not to appeal his order. On January 2, 1990, the trial court appointed counsel to represent Robinson and set his arraignment for January 15. Robinson's trial began on April 4, slightly less than seven months after Judge Heck had entered his order.

Under a South Dakota statute, criminal cases must be disposed of within 180 days from the date on which the defendant first appeared before a judicial officer on the complaint or indictment, unless good cause exists for a delay. S.D. Codified Laws Ann. § 23A–44–5.1. In Robinson's 1991 appeal, the South Dakota Supreme Court held that the 180–day rule does not apply when a court reverses a conviction and the defendant is retried. *Robinson,* 469 N.W.2d at 379. The court also found that even if the statute were applied to Robinson's case, the state met the 180–day deadline because Robinson had been tried within 180 days of November 14, 1989, the date on which Robinson first appeared before the trial court. *Id.*

South Dakota's interpretation of its speedy-trial statute has no bearing upon whether the state violated Robinson's federal constitutional right to a timely trial. *Stewart v. Nix,* 972 F.2d 967, 970 (8th Cir.1992). Rather, we are guided by *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). In *Barker* the Supreme Court identified four factors for determining whether a defendant was denied a speedy trial under

the Sixth Amendment: length of the delay, reason for the delay, the defendant's assertion of his right to a speedy trial, and prejudice to the defendant. 407 U.S. at 530, 92 S.Ct. at 2192. The length of delay factor is a triggering mechanism. *Id.* Absent some delay that is presumptively prejudicial under the peculiar circumstances of the case, we need not inquire into the other three factors. *Id.* at 530–31, 92 S.Ct. at 2192..

■ We do not believe that seven months is presumptively prejudicial, given the circumstances of this case. *Cf. Jenkins v. Purkett*, 963 F.2d 1117, 1118 (8th Cir.) (indicating that six months is not presumptively prejudicial), *cert. denied*, — U.S. —, 113 S.Ct. 321, 121 L.Ed.2d 242 (1992). Nonetheless, even if the other factors are considered, they do not indicate that Robinson was subjected to an unfair or prejudicial delay. Some of the delay may have been caused by the state's contemplation of appealing Judge Heck's order. The record contains no indication, however, that the state's conduct was undertaken in bad faith or with the design of hampering Robinson's defense. Indeed, Robinson has pointed to no prejudice flowing from the delay. Accordingly, we find that Robinson was not denied his right to a speedy trial.

### E. Other Crimes Evidence

■ Robinson argues that the trial court erred in admitting evidence of other crimes and bad acts. In particular, he contends that the court should have excluded evidence that at the time of his escape he was being held in the Hughes County Jail for violating parole and facing habitual offender charges; that he had previously been incarcerated in the Hughes County Jail; and that following his escape the police had been warned that he could be armed. On habeas review, we do not examine whether evidence was properly admitted under state law. *McGuire*, — U.S. at —, 112 S.Ct. at 480. We examine only whether admission of the evidence violated Robinson's federal constitutional rights. *Id.* Having reviewed the record, we find no constitutional violation.

We express our appreciation to appointed counsel for his zealous efforts on Robinson's behalf.

The order denying the petition for writ of habeas corpus is affirmed.