**Michael OWSLEY, Petitioner,**

**v.**

**Michael BOWERSOX, Respondent.**

No. 98–8001–CV–W–1.

United States District Court, W.D. Missouri, Western Division.

May 6, 1999.

1196

Charles M. Rogers, Wyrsch, Hobbs, Mirakian & Lee, Kansas City, MO, for petitioner.

Stacy L. Anderson, Missouri Attorney General's Office, Jefferson City, MO, for defendants.

## ORDER

WHIPPLE, District Judge.

Pending before the Court is Petitioner Michael Owsley's ("Owsley") petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Owsley is currently in state custody serving a sentence of capital punishment. His petition for habeas relief alleges that his trial and conviction in Missouri state court violated the guarantees of the United States Constitution on eight grounds. Respondent, the Superintendent of the Potosi Correctional Center, asserts that Owsley's eight claims are either procedurally defaulted or have no merit. Owsley has also filed related motions for: (1) an order authorizing further mental evaluations by Owsley's psychologists; and (2) an evidentiary hearing on Owsley's ineffective assistance of counsel claims. The Court has reviewed all of the motions, briefs, and records. For the reasons set forth below, the Court DENIES Owsley's motions and habeas petition.

## I. BACKGROUND

### A. Facts

A federal habeas court must presume that a state court's factual determinations are correct unless the habeas petitioner can rebut the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). *See Ashker v. Class,* 152 F.3d 863, 867 (8th Cir.1998); *Pruett v. Norris,* 153 F.3d 579, 584 n. 6 (8th Cir. 1998) (noting that Antiterrorism and Ef-

fective Death Penalty Act of 1996, Pub.L. No. 104–132,110 Stat. 1214,1218–21 (April 24,1996), increased evidentiary burden on habeas petitioners' challenges to state court factual findings filed after effective date of Act). Owsley asserts that some of the factual findings set forth by the Missouri Supreme Court are "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." (Petition at 3). Despite his contention, Owsley has failed to present clear and convincing evidence to rebut the findings of the state courts. Consequently, for the purpose of this Court's review, the facts of Owsley's case may be taken verbatim from the findings of the Missouri Supreme Court:

> On April 18,1993, Elvin Iverson, the murder victim in this case, drove from Kansas City, Missouri, to Junction City, Kansas, to sell drugs. Iverson was accompanied by Ellen Cole. When the two returned to the house in Kansas City where Iverson was staying, defendant Owsley and a codefendant named Hamilton confronted them and ordered them to lie on the ground. Both Iverson and Cole complied on observing that Hamilton carried a Tech–9 semi-automatic weapon with a silencer and Owsley carried a 12–gauge sawed-off shotgun.

> Hamilton then demanded to be told "where the [drug] money was." Iverson pleaded that he did not have the money and that he had given it to another person who had accompanied him to Junction City. After Hamilton pressed unsuccessfully for more information, Owsley spoke directly to Iverson, calling him "a thorough nigger" and saying that "you're [Iverson] begging for your life now, nigger." Owsley backed up his malicious comments by punching and kicking Iverson and, at times, beating his face with the sawed-off shotgun. When Iverson continued to deny that he had any money, Owsley then took a bag from Hamilton and began smothering Iverson. At that point, Hamilton asked Cole about the money, and in response, she

lied by offering to take them to a key. Hamilton then tied Cole and Iverson together by their feet with an electrical extension cord, and either he or Owsley covered them with a blanket. Owsley stood over them, hitting them with the barrel of the shotgun and said, "One of you live; one of you die." He put the gun to Iverson's head, but before he could fire, Hamilton instructed him to place a pillow over Iverson's head. After putting the pillow in place, Owsley pulled the trigger, killing him instantly.

> In making their getaway, the two gunmen untied Cole and took her along. Owsley forced her into Hamilton's car, and as Hamilton drove away, Owsley followed in another car. A short time later, Cole managed to escape from Hamilton's car and notify the police.

*State v. Owsley*, 959 S.W.2d 789, 791–92 (Mo. banc 1998).

## B. Procedural History

### 1. Pre–Trial History

Police arrested Owsley on April 22, 1993. The Court committed him for trial and appointed counsel to defend him. He was indicted eight days later. On August 19, the State requested that the Court order Owsley to submit to a mental examination. The Court entered this order on September 2, but the Western Missouri Mental Health Center ("WMMHC") could not begin its assessment until September 21, when it finally obtained a copy of Owsley's police report. On October 19, the court granted the WMMHC a forty five (45) day extension of time in which to complete the requested mental examination. The WMMHC completed its mental examination shortly thereafter and delivered its report to the Court on November 1, 1993.

Meanwhile, September 13, 1993, Owsley filed a motion for dismissal of counsel and appointment of substitute counsel. The court denied the motion and Owsley immediately moved to reconsider. On

November 17, Owsley filed a 'mandamus petition' asserting that the State had violated his right to a speedy trial. Although the court denied this petition, Owsley's court-appointed attorney, James McMullin ("McMullin"), moved for a speedy trial on November 29. In a letter to the court dated January 5, 1994, Owsley demanded that his speedy trial rights be enforced. Five days later, however, McMullin filed motions to appoint a psychologist to independently examine Owsley and for a continuance of Owsley's trial. Owsley indicated to the court that he opposed both motions and expected his trial to proceed as scheduled on January 18, 1994.

On January 20, 1994, the court conducted a hearing on several pre-trial issues pending in Owsley's case. The court granted McMullin's request for a court-appointed psychologist, overruled Owsley's speedy trial request, and denied Owsley's motion to reconsider dismissing McMullin and appointing substitute counsel. One day later, McMullin requested the court dismiss him as counsel, only to ask the court to disregard this request a week later because he and Owsley had seemingly resolved their problems.

McMullin requested a new mental examination of Owsley on February 3, 1994. The court granted this request, and the mental examination was completed by April 21, 1994. In the interim, McMullin complained to the Western Missouri Mental Health Center about their delay in performing the examination.

On May 31, 1994, Owsley filed a motion to dismiss on grounds that his speedy trial rights were violated. He requested a hearing on this motion. Almost two months later, on July 27, 1994, Owsley again filed a motion to dismiss, asserting that his case had not gone to trial within two terms of his indictment. The court denied Owsley's speedy trial motions on August 18, 1994. McMullin filed a new motion to dismiss on the same grounds on September 2, 1994. The court denied this motion on September 7, 1994.

At Owsley's request, McMullin filed, on September 15, 1994, a renewed motion to replace him as Owsley's counsel. The trial court held a hearing on October 13, 1994 and denied the motion. One day before trial, on October 17, 1994, Owsley moved the court to reconsider. McMullin read this motion to the court on Owsley's behalf and then asked the court to hear Owsley speak on his own behalf. After Owsley offered his statements about McMullin, McMullin responded, denying some of Owsley's specific allegations but asking that the trial court dismiss him as counsel, continue trial for thirty days, and appoint the Missouri public defender. McMullin's comments expressed his frustration at defending Owsley when he wouldn't cooperate. The trial court denied Owsley's motion and ordered trial to commence.

### 2. *Trial and Post–Conviction History*

Owsley's trial commenced on October 18, 1994, roughly eighteen months after he was arrested. On October 26, 1994, after deliberating less than four hours, a Jackson County jury convicted Owsley of first-degree murder, kidnapping, and two counts of armed criminal action. The punishment phase of Owsley's trial began the same day. Owsley was sentenced to death for first-degree murder, a consecutive term of life imprisonment for kidnapping, and two consecutive fifteen-year terms for armed criminal action.

On March 18, 1995, Owsley filed a timely *pro se* motion, pursuant to Missouri Supreme Court Rule 29.15, to vacate, set aside, or correct the judgment and sentence in his case. He was appointed post-conviction counsel, John Kurtz ("Kurtz"), who filed an amended Rule 29.15 motion. After a brief extension of time, the State moved to dismiss Owsley's Rule 29.15 motion and amended motion. Kurtz filed suggestions in opposition to the State's motion to dismiss on October 3, 1995.

Owsley filed a motion for recusal of the judge and request for an evidentiary hearing on December 12, 1995. These motions were overruled and denied, respectively, on January 16, 1996. On January 31, 1996, Kurtz moved for a pre-trial conference pursuant to Rule 62.01. Without holding any such conference, the court entered its Judgment, Findings of Fact, and Conclusions of Law on July 2, 1996. The court overruled Owsley's *pro se* Rule 29.15 motion because he failed to state facts in support of his allegations and failed to show ineffective assistance of counsel. The court also overruled and denied Owsley's amended motion for its failure to follow the format of Criminal Procedure Form 40 as mandated in Rule 29.15. Owsley's post-conviction counsel quickly moved the court to vacate or set aside its judgment. After obtaining the right to appeal as a poor person, Owsley filed a notice of appeal in the Supreme Court of Missouri on October 23, 1996. The Missouri Supreme Court affirmed the lower court's judgment on December 23, 1997 and denied rehearing on January 27, 1998.

### 3. History in this Court

Owsley filed a motion for appointment of counsel and stay of execution in this Court on February 19, 1998. He filed his petition for a writ of certiorari in the United States Supreme Court on June 26, 1998. This Court subsequently directed that Owsley file his petition for a writ of habeas corpus within twenty days after the final ruling by the Supreme Court on his petition for certiorari. The Supreme Court denied Owsley's petition for certiorari on October 5, 1998.

After twice moving for additional time in which to file a habeas corpus petition, Owsley filed his § 2254 petition on December 8, 1998. Respondent moved for an extension of time and ultimately responded to Owsley's petition on January 19, 1999. Owsley filed his traverse in reply thirty days later. Owsley's habeas petition is now ripe for disposition by the Court.

## III. DISCUSSION

### A. Introduction

The federal habeas statute authorizes United States district courts to entertain petitions for habeas relief from state court judgments only when the petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *see also* 28 U.S.C. § 2241(c)(3); *Garlotte v. Fordice*, 515 U.S. 39, 40, 115 S.Ct. 1948, 1949, 132 L.Ed.2d 36, 41 (1995). Owsley alleges that his trial and conviction violated the United States Constitution on eight separate grounds.[1] The Court cannot grant relief on any of Owsley's claims unless it finds that the state courts' adjudication of his claims resulted in a decision that was: (1) contrary to, or involved an unreasonable application of, clearly established federal law, or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d).

---

1. Owsley's claims are: (1) trial court error in failing to appoint substitute counsel for Owsley after an irreconcilable conflict allegedly arose between him and McMullin; (2) ineffective assistance of counsel at trial and at a pre-trial hearing on Owsley's motion for substitute counsel; (3) improper dismissal of Owsley's Rule 29.15 post-conviction motion on technical grounds; (4) trial court error in excluding evidence of voluntary intoxication in the guilt phase of Owsley's trial and in giving an improper jury instruction concerning the effect of voluntary intoxication on the requisite mental state of Owsley's crimes; (5) violation of Owsley's right of confrontation by the admission of the victim's autopsy report through the testimony of a medical examiner other than the one who performed the autopsy; (6) trial court error in excluding life history photographs of Owsley during the penalty phase; (7) violation of Owsley's constitutional right to a speedy trial; and (8) violation of due process through the Missouri's Supreme Court's allegedly meaningless proportionality review.

## B. Claim One: Trial Court Error in Refusing to Appoint Substitute Counsel.

Owsley's first claim alleges two different instances of trial court error. First, Owsley asserts that his constitutional rights were violated when the trial court refused to appoint substitute counsel after an irreconcilable conflict arose between Owsley and his court-appointed defense attorney, James McMullin. Owsley has consistently maintained his position that this conflict caused a complete breakdown in communications and precluded McMullin from effectively defending him. Second, Owsley contends that his rights were violated when the trial court did not appoint an attorney to represent Owsley during the October 17, 1994 hearing on Owsley's pretrial motion to appoint substitute counsel. Respondent counters that this two-part claim should be denied because disposition of this claim in state court did not involve an unreasonable application of federal law or an unreasonable determination of the facts in light of the evidence produced.

### 1. Failure to Appoint New Counsel Under Allegations of "Irreconcilable Conflict."

██ The United States Court of Appeals for the Eighth Circuit has found constitutional error when a trial court refuses to appoint different counsel after a criminal defendant has shown good cause to warrant substitution. *Smith v. Lockhart*, 923 F.2d 1314, 1320–21 (8th Cir. 1991). Good cause for substitution of defense counsel includes a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between the attorney and defendant. *Id.* at 1320. "When a defendant raises a seemingly substantial complaint about counsel, the judge 'has an obligation to inquire thoroughly into the factual basis of defendant's dissatisfaction.'" *Id.* (citations omitted). In this case, the trial court held, and the Missouri Supreme Court affirmed, that Owsley had failed to establish cause sufficient to justify appointing substitute counsel. Unless this Court finds that the state courts' determinations were unreasonable in light of the evidence produced or the constitutional standards set forth above, it must defer to their judgment and deny habeas relief. *See* 28 U.S.C. § 2254(d).

██ During the year preceding his trial, Owsley repeatedly objected to McMullin's representation and asked the trial court to appoint substitute counsel. At three different hearings, Owsley testified about his dissatisfaction with McMullin, citing irreconcilable conflict, conflict of interest, and a complete breakdown in communications. On several occasions, McMullin himself asked the court to consider appointing different counsel on grounds that Owsley appeared determined not to cooperate with him. The trial court refused to appoint new counsel because it found that Owsley himself caused the problems with McMullin. In the first of three hearings on the matter, on January 20, 1994, the trial court inquired into Owsley's reasons for wanting substitute counsel, lectured Owsley about the necessity of working with counsel, and then asked Owsley, "What do you want me to do?" Owsley responded, "Whatever you believe is right." (Tr. 13, January 20, 1994). The court denied Owsley's motion and retained McMullin as his appointed counsel. During the second hearing, on October 12, 1994, the court again inquired into the specifics of Owsley's complaints. The court found that McMullin was prepared for trial and expressed confidence in his abilities as a criminal defense attorney. To accommodate Owsley's apparent concerns, however, the court appointed Lewis Caskey as second-chair for Owsley's trial. (Tr. 27, October 12, 1994). Finally, on October 17, 1994, the court heard for the third time Owsley's objections to McMullin's representation. The court denied this last minute motion for new counsel, indicating its belief that Owsley was choosing not to cooperate, that he was unlikely to cooperate with any appointed counsel, and that the courts had "bent over backwards

to satisfy every request" that he had made. (Tr. 109, October 17, 1994). The Missouri Supreme Court affirmed, stating that "Owsley is not permitted to generate an "irreconcilable conflict" through his own misconduct." *State v. Owsley,* 959 S.W.2d 789, 793 (Mo. banc 1997).

Based on the Court's review of the record in this case, it finds that the state courts' determinations were not unreasonable. The trial court and Missouri Supreme Court both found that Owsley failed to establish good cause because any irreconcilable conflict, breakdown in communication, or conflict of interest was of his own manufacture. For this reason alone, Owsley's case is dissimilar to *Smith v. Lockhart,* 923 F.2d 1314 (8th Cir.1991). In the instant case, the trial court did not force Owsley to waive his right to counsel when he objected to McMullin. *Cf. Smith,* 923 F.2d at 1317 ("the judge told Smith he either could accept Marquette or he could proceed *pro se* "). The court specifically inquired into Owsley's reasons for wanting new counsel, rather than simply dismissing Owsley's attempts to speak on his own behalf. *Cf. Id.* ("Although Smith attempted to argue the merits of his stated conflict of interest, Judge Langston refused to inquire further"). Before the court made its decision to retain McMullin on January 20, 1994, Owsley told the court that he would abide by whatever decision the court thought was right. Moreover, the court later appointed a second-chair for Owsley's trial at his request. All of these actions were attempts to discern whether Owsley's objections had any basis in law or fact and to accommodate his apparent dissatisfaction with McMullin.

Additionally, Owsley presented no evidence of a breakdown in communication besides his refusal to speak with McMullin for a few days in January 1994. McMullin filed, as Owsley's request, numerous *pro se* motions that Owsley prepared. This fact alone indicates communication and cooperation. To the extent Owsley and McMullin

disagreed, their disagreements were based on Owsley's uninformed objections to trial strategy. McMullin had a legal and ethical obligation to zealously advocate for Owsley within the bounds of the law; legal ethics also dictate that McMullin could not pursue tactics that have no basis in fact or law [2]—something Owsley apparently did not understand. Under these circumstances, the trial court committed no constitutional error.

### 2. Failure to Appoint Counsel at October 17, 1994 Hearing.

Owsley claims that his right to assistance of counsel was violated during the October 17, 1994 hearing on his motion for substitute counsel because McMullin disputed his factual assertions about the alleged irreconcilable conflict between them and Owsley was not given another lawyer to aid him in arguing his motion. Under the Sixth Amendment, criminal defendants are entitled to the assistance of counsel at all critical stages of the proceeding against them. *United States v. Wade,* 388 U.S. 218, 226, 87 S.Ct. 1926, 1931, 18 L.Ed.2d 1149 (1967); *Smith v. Lockhart,* 923 F.2d at 1318. Critical stages are generally defined as "steps in the proceeding in which the accused is confronted by the procedural system or the prosecutor or both and where available defenses may be irretrievably lost." *Smith,* 923 F.2d at 1319 (citations omitted). The October 17 hearing on Owsley's motion for substitute counsel did not jeopardize his rights or defenses such that they could be irretrievably lost. Consequently, the hearing on this motion was not a "critical stage." *See United States v. Blum,* 65 F.3d 1436,1441 (8th Cir.1995) (finding arraignment may or may not constitute critical stage depending on whether rights of accused may be lost or sacrificed at such proceedings). Moreover, a habeas petitioner must prove actual prejudice from the absence of counsel to warrant relief. *Blum* 65 F.3d at 1441.

2. Mo.S.Ct.R. 4–3.1

The Missouri Supreme Court, however, specifically found that Owsley was not prejudiced by the absence of substitute, temporary counsel. *State v. Owsley*, 959 S.W.2d 789, 793 (Mo. banc 1997). After reviewing the record, the Court believes this determination was reasonable. Owsley spoke eloquently about his motion for a new lawyer—his reasons and facts simply did not support such an action. The trial court's determination and Missouri Supreme Court's affirmance should not be overturned under such circumstances.

## C. Claims Two and Three: Ineffective Assistance of Counsel and Improper Dismissal of Owsley's Rule 29.15 Post–Conviction Motion.

For his second claim, Owsley contends that he is entitled to habeas relief because McMullin's representation was ineffective and prejudiced his defense at trial. Respondent counters that Owsley's ineffective assistance of counsel claims are procedurally barred from federal habeas review because Owsley's post-conviction motion was overruled by the trial court and denied by the Missouri Supreme Court on procedural grounds. Rather than claiming that his supposed procedural default is somehow excused, Owsley argues that the procedural rule applied by the state courts is not sufficient to bar federal habeas review. Before the Court can reach the merits of Owsley's ineffective assistance of counsel claims, therefore, it must determine whether Owsley's claims are procedurally defaulted.

### 1. *Procedural Default Through Application of Rule 29.15.*[3]

■ Federal courts are barred from reviewing claims decided on independent and adequate state law grounds. *Fox Film Corp. v. Muller*, 296 U.S. 207, 210, 56 S.Ct. 183, 184, 80 L.Ed. 158 (1935). This well-established principle also bars federal review of habeas claims when a state court

has declined to rule on them because the petitioner failed to present them in a manner prescribed by its procedural rules. *Harris v. Reed*, 489 U.S. 255, 262, 109 S.Ct. 1038, 1042–43, 103 L.Ed.2d 308 (1989). "A claim that is procedurally defaulted under state law, however, is barred from review only if the state procedural rule is both (1) firmly established and (2) regularly followed." *Oxford v. Delo*, 59 F.3d 741, 744 (8th Cir.1995). Where a state procedural rule is inconsistently enforced or the state court undertakes a novel application of the procedural rule, federal review is not barred. *Id.*

■ In the instant case, the trial court dismissed Owsley's amended post-conviction motion because it did not substantially follow the format of Criminal Procedure Form 40 as required by Missouri Supreme Court Rule 29.15. The Missouri Supreme Court affirmed on the same grounds. To determine whether Owsley's ineffective assistance of counsel claims are procedurally barred, the Court must determine whether Rule 29.15 firmly establishes that amended motions must substantially follow Criminal Procedure Form 40 and whether Missouri courts regularly invoke this rule to dismiss non-compliant amended motions.

Rule 29.15 provides the exclusive procedure for post-conviction relief in Missouri. Pursuant to Rule 29.15(b), a person convicted of a felony may challenge the conviction by filing a motion to vacate, set aside, or correct the judgment or sentence. Subsection (b) requires that such post-conviction motions be "substantially in the form of Criminal Procedure Form 40." However, the application of this requirement to *amended motions* is far from clear. Rule 29.15 employs and interchanges two different terms: "motion" and "amended motion." Subsection (b) introduces the term "motion." That subsection and those following it set forth numerous requirements for "motions" filed under the

---

**3.** The Court's analysis focuses on Rule 29.15 as it existed in 1995, at the time Owsley's

postconviction motion was considered by the trial court. The Rule has since been revised.

Rule. Subsection (e) discusses the potential need for, existence of, and rules governing "amended motions."

The requirement that a "motion" be filed "substantially in the form of Criminal Procedure Form 40" could be read to include "amended motions," as the state courts apparently did. Such an interpretation, however, ignores other requirements in which the Rule more carefully distinguishes between the two types of motions. For example, subsection (b) requires that a "motion" must be filed within thirty (30) days after an appeal is filed or ninety (90) days after the prisoner is delivered to the custody of the department of corrections. Subsection (f) provides a different time limitation for the filing of "amended motions." This distinction indicates that not all requirements for "motions" apply equally to amended motions. Although this example could be dismissed as a mere application of the ancient precept of statutory construction *expressio unius est exclusio alterius* —the specific controls the general, the Rule's other distinctions between motions and amended motions cannot be so easily explained. For instance, subsection (d) requires that the "movant shall verify the motion," while subsection (f) mandates that "[a]ny amended motion shall be verified by movant."[4] This distinction between motions and amended motions provides the best comparison: if appointed attorneys are expected to apply all requirements for motions (such as the requirement as to form of filing) to amended motions, then why would Rule 29.15 expressly require verification of amended motions when such a requirement already exists for motions? In this Court's opinion, Rule 29.15 did not firmly establish that "amended motions," as opposed to "motions," must substantially follow the format of Criminal Procedure Form 40.

The Court is equally skeptical of Respondent's contention that "a review of Missouri case law will reveal that Missouri has consistently and regularly [applied] the pleading requirements of Form 40" to amended motions. *See* Respondents' Brief at 33. Respondent supported its contention with only one case from the Missouri Court of Appeals, *State v. Katura,* 837 S.W.2d 547 (Mo.Ct.App.1992), which was also the only case upon which the trial court's dismissal and Supreme Court's affirmance were based. Owsley, on the other hand, submitted affidavits from two experienced criminal defense attorneys who both stated that they were unaware, prior to the dismissal of Owsley's postconviction motion, of any requirement that amended motions follow the format of Form 40. Both attorneys also attested to their awareness of numerous amended postconviction motions that had not tracked Form 40 but which postconviction courts had reviewed on their merits.

The Court's own review of Missouri case law leads to a similar conclusion. The Court could find no cases other than *Katura* and *Owsley* in which a Missouri court had dismissed or overruled a postconviction motion for its failure to track Form 40. However, the Court found several statements by Missouri courts which indicated that amended motions need not comply with Form 40. In *Wilkins v. State,* 802 S.W.2d 491 (Mo. banc), *cert. denied* 502 U.S. 841, 112 S.Ct. 131, 116 L.Ed.2d 98 (1991), the Missouri Supreme Court heard an appeal from the denial of a Rule 24.035 motion.[5] Rule 24.035 imposes requirements virtually identical to Rule 29.15, including the requirement that motions be filed "substantially in the form of Criminal Procedure Form 40." The movant in *Wilkins* filed a *pro se* motion and two amended motions. The *Wilkins* court expressly noted that the second of these amended motions was fifty pages long, but nevertheless considered the amended motions on

---

**4.** Since 1995, this language in Rule 29.15 has been amended to modify the verification requirement. The change was made to clarify confusion as to verification.

**5.** Rule 24,035 governs motions for relief from convictions after a guilty plea.

their merits. *Id.* at 496. In *State v. Gardner,* 932 S.W.2d 858 (Mo.Ct.App.1996), the court considered a Rule 29.15 amended motion that it noted was "26 pages long." *Id.* at 859. The *Wilkins* and *Gardner* court's statements about the length of the amended motions suggests that they were not "substantially in the form of Criminal Procedure Form 40." In *State v. Brooks,* 960 S.W.2d 479, 498 (Mo. banc 1997), a prisoner seeking postconviction relief under Rule 29.15 complained that his motion, which the trial court had found deficient, was only deficient because Form 40 does not provide sufficient room to develop facts. The *Brooks* court answered this argument by stating that the movant's appointed counsel could have remedied this problem with an amended motion. *Id.* The court's reasoning indicates that it considered amended motions to be free from the strictures of Criminal Procedure Form 40. Finally, in *State v. Sumling,* 939 S.W.2d 403, 404 (Mo.Ct.App.1996), the court of appeals rejected the State's contention that a Rule 29.15 *pro se* motion should be dismissed because it was not "substantially in the form of Criminal Procedure Form 40." The *Sumling* court stated that the *pro se* motion was "sufficient to apprise the trial court, this court, and the State of movant's intent to pursue relief under Rule 29.15. Therefore, it is sufficient to require the trial court to appoint counsel to prepare an amended motion and to address the issues raised on the merits." *Id.* These cases indicate that the Form 40 requirement, especially as applied to amended motions, is nebulous and irregularly enforced by Missouri courts. For this reason, and because the Court finds that the express language of Rule 29.15 does not firmly establish a Form 40 requirement for amended motions, the Court cannot uphold the procedural bar of Owsley's claims.

### 2. *Ineffective Assistance of Counsel and Motion for Evidentiary Hearing.*

Having determined that Owsley's ineffective assistance of counsel claims are not procedurally barred, the Court must now address the merits of these claims. Owsley alleges that McMullin's assistance "was ineffective not in just a few particulars, but in almost every particular." *See* Petitioner's Traverse at 16. He requests that the Court hold an evidentiary hearing since his ineffective assistance claims were not addressed by the state courts. The state courts were not required to hold such a hearing, however, even if they had addressed the merits of Owsley's postconviction motion. *See* Rule 29.15(h). Accordingly, no hearing is required by this Court if it determines that the files and records of the case conclusively show that Owsley's allegations are without merit or that Owsley's claims, taken as true, do not warrant habeas relief. *See Engelen v. United States,* 68 F.3d 238, 240 (8th Cir.1995); *Smith v. United States,* 618 F.2d 507, 510 (8th Cir.1980) (stating that mere statements of unsupported conclusions will not suffice to command a hearing). *See also State v. Jones,* 979 S.W.2d 171, 180 (Mo. banc 1998) ("Rule 29.15(h) does not require an evidentiary hearing if the motion court determines that the files and records of the case conclusively show that the movant is not entitled to relief."); *State v. Brooks,* 960 S.W.2d 479, 497 (Mo. banc 1997) ("In order to obtain an evidentiary hearing, in claims related to ineffective assistance of counsel, the movant must allege facts, not refuted by the record, showing that counsel's performance did not conform to the degree of skill, care, and diligence of a reasonably competent attorney and that the movant was thereby prejudiced.").

*Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) establishes the standard for determining whether McMullin's representation of Owsley was ineffective in violation of the Sixth Amendment. To establish ineffective assistance of counsel under this standard, Owsley must show that McMullin's performance was deficient and that he was

prejudiced by this deficiency. *Id. See also Shaw v. United States,* 24 F.3d 1040, 1042 (8th Cir.1994). A counsel's representation was deficient if it fell below an objective standard of reasonableness. *Id.* However, that representation is entitled to a strong presumption of reasonableness. *Id.* The Court must not examine McMullin's conduct with the aid of hindsight lenses that bring into focus what his best course of action would have been. *Id.*

Owsley supports his ineffective assistance claims with numerous and varied allegations of deficient representation. Owsley argues that McMullin's pre-trial performance was unreasonably deficient because he: filed a notice of mitigating circumstances in Owsley's case that actually applied to the case of a different criminal defendant; failed to obtain a complete deposition of prosecution witness Ellen Cole and apparently didn't know, one week before trial, that Owsley's codefendant's counsel, Mr. Berrigan, was attempting to take such a deposition; began contacting witnesses at trial or only a few weeks before trial; consistently refused to investigate or seek the admission of exculpatory, corroborative, or impeachment evidence on the grounds that it was "collateral"; had little to no pre-trial contact with his expert witnesses to prepare them; failed to provide them with necessary information; and failed to ask the expert neuropsychologist to perform assessments that would have resulted in more favorable information to Owlsey's defense. Owsley further argues that McMullin's assistance during trial was deficient because: McMullin's opening statement was incoherent and irrelevant to any theory of Owsley's defense; he failed to adequately cross-examine the prosecution's firearms expert about the possibility of the gun having accidently fired; he failed to respond to prosecution theories about how the gun did *not* accidently fire; he stumbled through direct examinations of his expert witnesses during the penalty phase; he failed to make an adequate offer of proof regarding evidence of intoxication

proffered to show lack of deliberation; and he alienated the jury with offhand, off-color, and inappropriate comments to them and to the venire panels from which the jury came.

While Owsley's claims of deficient representation are numerous and varied, his allegation of prejudice from these deficiencies is singular and succinct: "Mr. Owsley was found guilty of first degree murder and sentenced to death. Mr. Hamilton, the co-actor who, by all accounts, orchestrated the robbery attempt and the killing, was convicted of second degree murder and sentenced to twenty years." *See* Petitioner's Traverse at 16. From this statement, the Court must glean that Owsley claims he would not have been convicted of first degree murder and/or received the death sentence had McMullin's representation been constitutionally adequate. Such a sweeping statement of prejudice is insufficient to warrant relief. To show prejudice, Owsley must establish that McMullin's alleged errors were "so serious as to deprive [him] of a fair trial, a trial whose result is reliable." *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. More specifically, Owsley must demonstrate the existence of a reasonable probability that, but for McMullin's errors, the result of the proceeding would have been different. 466 U.S. at 694, 104 S.Ct. at 2068. Owsley cannot simply regurgitate this standard; he must support his allegation by showing *how* the alleged errors prejudiced his defense.

■ For example, Owsley fails to explain how McMullin's allegedly deficient performance before the trial adversely affected its final outcome. Owsley does not claim that McMullin's erroneous filing of an inappropriate notice of mitigating circumstances prevented the jury from hearing evidence of appropriate mitigating circumstances during the penalty phase. Although Owsley points to instances where McMullin refused to investigate certain individuals, he has not told the

Court what these individuals might have said or how their evidence or testimony would have altered the outcome at trial. To establish prejudice from counsel's failure to investigate potential witnesses, a petitioner must show that the witnesses would have testified and that their testimony would have probably changed the outcome of the trial. *Cf. Hadley v. Groose,* 97 F.3d 1131, 1135 (8th Cir.1996) (citing *Stewart v. Nix,* 31 F.3d 741, 744 (8th Cir.1994)).[6] Similarly, Owsley has not shown how McMullin's minimal pretrial contact with his medical experts adversely impacted their testimony on his behalf. These experts presented their reports concerning Owsley's neuropsychological and pharmacological assessments, just as McMullin requested· of them. McMullin's pre-trial contact, or lack thereof, with these experts did not affect the jury's determination, even if McMullin himself made some minor presentation errors as to their qualifications or function.

■ In much the same way, Owsley's claims of deficient trial performance are meritless. Owsley has not and cannot establish prejudice from McMullin's opening statements or closing arguments. These statements and arguments are not evidence, and there is no reason to conclude that more passionate, well-reasoned, or organized statements by McMullin would have altered the jury's verdict and sentence. *See Griffin v. Delo,* 33 F.3d 895, 903 (8th Cir.1994). The alleged inadequacy in McMullin's offer of proof as to lack of deliberation due to intoxication does not undermine the Court's confidence in the jury's verdict of first-degree murder. Ample evidence of intoxication was introduced through the testimony of Detective Cridlebaugh and the dialogue of the videotaped confession.

■ Although Owsley's ineffective assistance claims are substantial in number, the Court concludes that, even in the aggregate, they do not constitute a violation of his Sixth Amendment rights. McMullin's performance did not affect the fairness of Owsley's trial. *See Lockhart v. Fretwell,* 506 U.S. 364, 369, 113 S.Ct. 838, 843, 122 L.Ed.2d 180 (1993) ("Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated."). The jury considered Owsley's videotaped confession; they considered Ellen Cole's testimony that Owsley had attempted to suffocate his victim prior to shooting him, that he had placed a pillow over his head before shooting, and that he had stated. "One of you live, one of you die." McMullin was successful in telling the jury that Owsley was intoxicated and that Cole could not be trusted due to her prior conviction. He brought mitigating circumstances to the jury's attention and introduced expert evidence of Owsley's emotional and mental incapacities. Owsley received a fair trial in which the jury considered all evidence that was relevant to his case. He was convicted and received a death sentence. Under the facts as taken from the record of his case, Ows-

Regarding both the prejudice and performance prongs, it is significant to note that Owsley's potential witnesses were not alibi witnesses, or individuals who could provide exonerating evidence. *Cf. Hadley v. Groose,* 97 F.3d at 1135. Rather, Owsley demanded that McMullin investigate these individuals for purposes of gathering impeachment evidence that McMullin believed could never be used because it was collateral. A trial counsel has a duty to conduct a reasonable investigation or to make a reasonable determination that an investigation is unnecessary. *Griffin v. Delo,* 33 F.3d 895, 901 (8th Cir.1994). The record shows that McMullin reasonably believed that he would never use collateral impeachment evidence collected from an investigation into FBI Agent Hess' dealings with Owsley's co-defendant Hamilton, Ellen Cole's assault on Cathy Dickerson, Trooper Smith's routine traffic stop of Hamilton the day before the murder, Ronnie Williams and Deandre Higgins association with Hamilton, or Ellen Cole's employment records. Thus, McMullin's decision not to pursue investigation of these individuals was reasonable, and Owsley cannot show prejudice because there is no probability that investigation of these individuals would have uncovered relevant evidence at trial.

ley cannot blame McMullin for the outcome of his trial.

### D. Claim Four: Trial Court Error in Excluding Evidence of Intoxication During Guilt Phase and Giving Jury Instruction on Effect of Such Evidence.

For his fourth claim, Owsley alleges that his due process rights were violated when the trial court: (1) excluded testimonial evidence of his voluntary intoxication during the guilt phase, and (2) instructed the jury that an intoxicated condition from alcohol will not relieve a person of responsibility for his conduct. Owsley's claim essentially challenges the constitutionality of R.S.Mo. § 562.076, which provides that:

(1) A person who is an intoxicated or drugged condition, whether from alcohol, drugs, or other substance, is criminally responsible for conduct unless such condition is involuntarily produced and deprived him of the capacity to know or appreciate the nature, quality of wrongfulness of his conduct.

(2) The defendant shall have the burden of injecting the issue of intoxicated or drugged condition.

(3) Evidence that a person was in a voluntarily intoxicated or drugged condition may be admissible when otherwise relevant on issues of conduct but in no event shall it be admissible for the purpose of negating a mental state which is an element of the offense.

R.S.Mo. § 562.076 (1994). In light of *Montana v. Egelhoff*, 518 U.S. 37, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996), the Court concludes that Owsley's challenge to this statute has no merit.[7]

In *Montana v. Egelhoff*, 518 U.S. 37, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996), a plurality of the Supreme Court upheld the constitutionality of a statute similar to R.S.Mo. § 562.076. Four justices on the *Montana* Court held that a criminal defendant's right to have the jury consider evidence of voluntary intoxication in determining whether he possessed the requisite mental state was not a "fundamental principle of justice" and could be curtailed by a state legislature. 518 U.S. at 56, 116 S.Ct. at 2024. The other five justices disagreed with this evidentiary ruling, holding that if evidence of voluntary intoxication is relevant and exculpatory, a criminal defendant has a due process right to present that evidence in his defense. 518 U.S. at 57, 116 S.Ct. at 2024 (Ginsburg, J., concurring); 518 U.S. at 71–72, 116 S.Ct. at 2031 (O'Connor, J., dissenting). These five justices also agreed, however, that the Constitution allows a state to redefine the mens rea element of its crimes to make individuals criminally responsible even when voluntarily intoxicated. *Id.*

Under either line of the *Egelhoff* Court's reasoning, the Court must find that R.S. Mo. § 562.076 is constitutional. That statute clearly redefines the mental state of

---

7. Respondent argues that because the Missouri Supreme Court declined to review the trial court's evidentiary ruling for plain error, Owsley's evidentiary claim is procedurally defaulted. The Missouri Supreme Court refused to review Owsley's claim because he "made no clear or direct challenge to this statute either at trial or in his motion for new trial." *Owsley*, 959 S.W.2d at 795. While Missouri has long "adhered to the rule that to preserve a constitutional issue for appellate review, it must be raised at the earliest time consistent with good pleading and orderly procedure," *State v. Flynn*, 519 S.W.2d 10, 12 (Mo.1975); *State v. Tygart*, 673 S.W.2d 83, 87 (Mo.Ct.App. 1984), no Missouri court prior to the supreme court in Owsley's case has held that a consti-

tutional issue must be raised in a "clear or direct challenge." Apparently, all that has been required in the past is that the issue be raised before or during trial. *Id.* In this case, when the trial court excluded Owsley's evidence pursuant to R.S.Mo. § 562.076, McMullin stated that he and Owsley did not agree with the statute or the legislature. The trial court clearly understood this to mean that they believed the statute was unconstitutional. *See* Tr. 766. In this Court's opinion, McMullin's statement to the trial court was sufficient to preserve the issue for appeal, and the supreme court's refusal to review the claim does not constitute an adequate and independent state law basis for barring federal habeas review.

Missouri's specific intent crimes so as to make a person criminally responsible for his conduct even when voluntarily intoxicated. When a state legislature chooses to redefine the mens rea of its crimes to make voluntarily intoxicated individuals culpable for their conduct, it permissibly eliminates the exculpatory relevance of voluntary intoxication evidence. Such a statute is not unconstitutional.

### E. Claim Five: Trial Court Error in Admitting Autopsy Report Through Testimony of Different Medical Examiner.

Over the objection of Owsley's counsel, the trial court permitted Dr. Michael Bergman, the Jackson County, Missouri Medical Examiner, to testify about the autopsy report of the victim, Elvin Iverson. Owsley's counsel objected on grounds that the testimony of Dr. Bergman constituted inadmissible hearsay because the autopsy had actually been performed by Dr. Bergman's predecessor, Dr. John Overman. Owsley's current claim seeks habeas relief on grounds that the admission of Dr. Bergman's testimony violated his Sixth Amendment right of confrontation.

The admissibility of evidence in a state court proceeding is a matter of state law and usually does not form the basis for habeas corpus relief. *See Hatley v. Lockhart*, 990 F.2d 1070, 1072 (8th Cir. 1993) (affirming dismissal of habeas petition). Even if the trial court erred in admitting or denying the admission of evidence, the "error must be so great that it infringes upon a specific constitutional protection or is so prejudicial that it amounts to a denial of due process." *Id.* A habeas petitioner's burden on this point is "much greater than that required on direct appeal and even greater than the showing of plain error." *Mendoza v. Leapley*, 5 F.3d 341, 342 (8th Cir.1993).

In this case, the Court concludes that the trial court's admission of Dr. Bergman's testimony is not an egregious error of constitutional dimension. The autopsy report was properly qualified under Missouri's Business Records as Evidence law, R.S.Mo. § 490.680. Dr. Bergman relied upon this report in testifying; he presented no opinions other than his own. Given these facts, the autopsy report was properly admitted as an exception to the hearsay rule and the testifying medical examiner's opinion was properly based on his review of that report. *See Manocchio v. Moran*, 919 F.2d 770, 777, 784 (1st Cir. 1990) (admission of autopsy report in absence of testimony of preparer and through testimony of different medical examiner did not violate confrontation clause). Although the State failed to establish unavailability, such is not required for application of the Business Records as Evidence law or for exception to the confrontation clause. *See United States v. Inadi*, 475 U.S. 387, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986) (supporting proposition that reliable out-of-court statements generally can be constitutionally introduced without producing an available declarant); *Manocchio v. Moran*, 919 F.2d 770, 777 (1st Cir.1990). Owsley's Sixth Amendment right to confrontation was not violated by admission of the autopsy report through Dr. Bergman's testimony.

### F. Claim Six: Trial Court Error in Excluding "Life History" Photographs.

During the penalty phase of Owsley's trial, he sought to introduce as mitigating evidence certain photographs of himself at various stages of his life. The trial court excluded these photographs from evidence and the Missouri Supreme Court affirmed, finding that the photographs were irrelevant to Owsley's " 'background or character or to the circumstances of the offense.' " *State v. Owsley*, 959 S.W.2d at 796 (quoting *Penry v. Lynaugh*, 492 U.S. 302, 318, 109 S.Ct. 2934, 2946–47, 106 L.Ed.2d 256 (1989)). Owsley now seeks habeas relief on grounds that this ruling violated his Eighth and Fourteenth Amendment rights. This Court

cannot agree. Both state courts found that Owsley's proffered photographs were irrelevant as sentencing evidence because they did not reflect on any aspect of his character, record, or the circumstances of the offense for which we was convicted. Based upon a review of the photographs at issue, the Court finds that the state courts' factual determinations were reasonable and its legal conclusions proper. *See Lockett v. Ohio,* 438 U.S. 586, 604 n. 12, 98 S.Ct. 2954, 2965 n. 12, 57 L.Ed.2d 973 (1978) ("Nothing in this opinion limits the traditional authority of a court to exclude, as irrelevant, evidence not bearing on the defendant's character, prior record, or the circumstances of his offense").

### G. Claim Seven: Violation of Owsley's Constitutional and Statutory Speedy Trial Rights.

 As noted in the Court's statement of facts, *supra,* Owsley was brought to trial approximately eighteen months after he was arrested and charged with the murder of Elvin Iverson. Owsley attempted to invoke his speedy trial rights seven different times during those eighteen months. Consistent with those instances, Owsley now argues that the eighteen-month delay between his arrest and trial violated his Sixth Amendment right to a speedy trial.[8] A constitutional speedy trial claim is examined under the four part test of *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). This test balances the length of the delay, the reason for the delay, the defendant's assertion of his speedy trial right, and the prejudice that the defendant has suffered as a result of the delay. *See id.; Matthews v. Lockhart,* 726 F.2d 394, 396 (8th Cir.1984). The Missouri Supreme Court considered the *Barker* factors and concluded that Owsley's right to a speedy trial had not been violated. This Court agrees. Al-

though an eighteen month delay between arrest and trial is presumptively prejudicial under *Barker, see Matthews,* 726 F.2d at 396, Owsley has not shown that his defense was prejudiced by the delay. Moreover, Owsley and his trial counsel were the primary causes of the delay, not the State. The prosecutor never sought a continuance; his only contribution to the eighteen month delay was a motion for a mental examination that required a small amount of additional time to complete. By contrast, Owsley's trial counsel sought continuances on several occasions so as to conduct more discovery and reassess Owsley's mental and emotional capacity. Although Owsley requested enforcement of his speedy trial rights, he also filed numerous other *pro se* motions that the trial court was forced to address. The Court will not grant habeas relief based on a pretrial delay that Owsley and his attorney primarily caused and from which he received no prejudice. *See Robinson v. Leapley,* 26 F.3d 826, 831 (8th Cir.1994).

### H. Claim Eight: Due Process Violation Through Meaningless Proportionality Review.

 In his final claim for relief, Owsley argues that the Missouri Supreme Court's proportionality review has become a meaningless ritual that violates his constitutional right to meaningful appellate review of his death sentence. Owsley rests his claim on the United States Supreme Court's directive that a state which affords a right of appeal must make that right more than a "meaningless ritual." *Evitts v. Lucey,* 469 U.S. 387, 394–95, 105 S.Ct. 830, 834–35, 83 L.Ed.2d 821 (1985) (addressing right to counsel). Missouri's proportionality review is designed "to prevent freakish and wanton applications of the death penalty." *Owsley,* 959 S.W.2d at

---

8. To the extent Owsley's claim relies upon an alleged violation of his statutory rights under Missouri law, the Court will not review these claims. Federal habeas courts cannot review claims that have been denied on independent and adequate state law grounds. *Poe v. Caspari,* 39 F.3d 204, 207 (8th Cir.1994), *cert. denied,* 514 U.S. 1024, 115 S.Ct. 1376, 131 L.Ed.2d 230 (1995).

798. Owsley's only evidence that the Missouri Supreme Court's proportionality review was meaningless is that it had not overturned a death sentence on such grounds for fifteen years. Owsley did not establish that any reviewed death sentences should have been overturned on grounds of proportionality. The Missouri Supreme Court has repeatedly set forth the process by which it reviews sentences for proportionality, and Owsley's sentence fits squarely into a long category of death sentences that have been imposed for similar aggravating circumstances. This Court cannot look behind the Missouri Supreme Court's decision on this issue. *See Chambers v. Bowersox,* 157 F.3d 560, 570 (8th Cir.1998). No constitutional violation has occurred.

## IV. CONCLUSION

Petitioner Michael Owsley alleges eight different grounds for relief in his petition for a writ of habeas corpus under 28 U.S.C. § 2254. The Court has closely reviewed all eight claims and finds that they do not warrant relief. Accordingly, Owsley's petition is DENIED.

It is further ORDERED that Owsley's motions for an evidentiary hearing and further psychological evaluation are DENIED.